Alright, I see Mr. Schreiner and Ms. Bonamici. Good morning to you both. Mr. Schreiner, you may proceed. Oh, you're still on mute. You're a pro at this, I'm not. Good morning, Chief Judge Sykes may it please the court. This is not the first 2241 that this court has considered. And certainly, the issues are familiar to the court from its fairly recent decisions. So let me get right to it. I didn't even know there was a federal prison in Thompson. But it is and it's in the western division of the of the northern district. Close enough to the Mississippi River that he might well have been in the Eighth Circuit, but he was in the seventh. And so you get it. That's how we're here. Now, 2241. Obviously, this court has said many times is a remedy that is available to someone who has not previously raised arguments that 2241 raises in a in a 2255. And that's the situation here. Mr. Horton was convicted in the western district of Missouri, took an appeal to the Eighth Circuit and lost a file of 2255 in the western district. The Eighth Circuit denied leave to appeal. Mathis comes along. Now, the test obviously requires is well established that the in order to take advantage of the saving clause and 2255 E that the argument he raises be based on a decision of statutory interpretation. This court has said so. The government concedes it. And it's a new decision. It also requires as a second ground that the at the time of the 2255 motion, the petitioner show that it would have been futile to raise the arguments that he did make after Mathis rendering the 2255 remedies inadequate or ineffective. This is a subject of our disagreement with the government this morning. The third ground is that the court has to determine that if Mr. Horton is correct in his contentions about the inappropriate use of enhancements to raise his sentence, that he suffered a miscarriage of justice. And we, again, there's been a lot of discussion of this in this court's cases recently, Chazen, Gunther, that we think that the government has effectively conceded that Chazen is to the contrary. And it has not developed an argument to get around Chazen. It's got a footnote on page 24 of its brief where it acknowledges that it disagrees with Chazen that the wrongful application of a statutory minimum under the Armed Career Criminal Act was a miscarriage of justice. But it doesn't develop its point that there's no miscarriage in that situation. As long as the defendant would have faced a maximum life sentence and states that that's their position, but it isn't developed. So I'm not going to court has questions. Obviously, I'll address them. And I do want to get back into the issue of the miscarriage of justice. When I talk at the end about the sentencing implications of about the implications of the wrongful sentences, but we're, we're here to talk today about the government's contention and the district courts holding that Eighth Circuit law. The distinction between elements and means Horton's argument relies on the distinction between elements and means for divisibility purposes. And in its Mathis decision, which of course the Supreme Court overruled the Eighth Circuit, as it had been doing for some time rejected the, the underpinnings of this argument, reasoning that we here are arguing, as with the burglary conviction and and Mathis, that we argue that because and it's what Mr. Horton has been arguing, because positional isomers constitute a means of violating Illinois statute defining cocaine. That statute is indivisible and overbroad. But the Eighth Circuit's Mathis decision and his prior precedent really treated any disjunctive list as divisible per se. Jason says that the Eighth Circuit read the camp if that's how it's pronounced is explicitly rejecting as explicitly rejecting the means element distinction. The government refers even to the government, even the government and its brief on page 18 refers to Horton's claims as based on a mismatch of elements in state and federal definitions of cocaine. Well, positional isomer is not an element. It's what Mathis Supreme Court decision does. This is just one of those facts out there. It's not an element. The element is cocaine. Yes, Your Honor. I'm sorry for interrupting you. Go ahead and finish your thought if you have one. No, that's fine. So you say this. That argument really runs counter to Ruth. And then I'll be happy to take your question here. Here's what I would really benefit from you addressing. What what I have a hard time understanding is not not why. You are you do very good job at it. Commend you. Not why you're casting Mr. Horton's argument in terms of Mathis, because I, of course, see that it's much easier to articulate. It takes on some persuasive force when you do it that way. So that part I totally get. The part that I don't under that I'm not following is why Mr. Horton was was precluded from advancing the position. In the rubric of Taylor at the time of his twenty two fifty five. I understand what happened at the Supreme Court in Mathis and all of that. But it seemed I guess what I'm struggling with is you you clothe his argument in the Mathis language for understandable reasons. But if you were to say what is what is at the core of his position? What I don't understand is why why you couldn't have advanced the substance, not you, him, the substance of that. And where under Eighth Circuit law, you think he would have been stuck or kind of foreclosed? Well, I think, Your Honor, that the Eighth Circuit had by the time Mr. Horton came along and in the district court governed by a circuit law, the Eighth Circuit had made it clear that it was not going to find any statute, any statute that had hangers on, you know, the positional isomer kind of stuff. Wasn't going to find any of those kinds of statutes indivisible. It would require that there be an argument that because it actually I think it says at one time that any what do I want to say? Any any sort of extra stuff needed to be dealt with under a let's look and see what you know, the categorical right. So I think you're right. Descriptively, I'll tell you that I think you describe the state of the law accurately. So they would have, they would have under their law as I read it, they would have pursued the so-called modified categorical approach. They would have looked at the Shepard documents. And wouldn't the next step have been, well, the Shepard documents don't really answer the question that way. They don't resolve the issue or put differently. They don't tell us what kind of cocaine Mr. Horton was possessing or dealing. And therefore, wouldn't he have been in a strong position just under the rubric of Taylor of arguing that the Wisconsin statute is overbroad, you know, vis-a-vis the Controlled Substances Act. The Illinois statute, I'm sorry, the Illinois statute, the 401C2. Yeah, the your your honor, I just I don't see what the I don't see what the Eighth Circuit was doing that way at all. I am trying to follow your point here. I do get it. But I think that it was really committed and you know what it did in Mathis and what it did with burglary statutes. It shows that it was really committed to finding a way to treat anything different. Any positionalism or kind of argument as throwing the defendant into the position of then having to argue that that it was divisible because that's how it talked. Mr. Shriner, it would be helpful for me if you finish answering Jeff Scudder's question. The particular part about once if we assume the Eighth Circuit got Mr. Mr. Horton's kind of revised claim pre-Mathis and said, you know what? We're going to treat this using the modified categorical approach. Let's look at the Shepard documents. What then would have happened to Mr. Horton in your view? I don't know, because particularly because it's not clear to anybody that there is such a thing as a positionalism or I understand from from one of the cases. But I don't think, frankly, that a fair reading of the Eighth Circuit case law suggests that they cared about that. I think they simply were. No, no, no. I don't know. Can I beg to differ with that? Go ahead. The reason that I think that that goes too far is because we have some indication of what the Eighth Circuit would do or was doing at the time based upon what they did in Mathis. And in Mathis itself, it turns out that the US Supreme Court determined they committed error. But we know what they did. And that is they looked at the Shepard documents in Mr. Mathis's case and they saw that he burglarized a garage. Right. So they were able to kind of answer the question that way. And they determined that that that fit. It wasn't overbroad. It fit within the generic definition of burglary. And, of course, the Supreme Court went the other way on that because they decided it was means and it was indivisible. And you shouldn't have looked at employed the modified categorical approach. But doesn't Mathis itself give us some indication of what the Eighth Circuit was doing? I think that goes to that's what Judge Jackson's question is getting at and my comments earlier are. Okay. Thank you for clarifying that. I don't think that that the Eighth Circuit and again, I'm trying to base this on what happened in Mathis. What would they have done had they applied the categorical modified categorical approach to the Illinois cocaine definition? I guess it's possible that they wouldn't have been able to separate it out. But the problem with it is it seems to me that their case law forced Mathis into arguing that it was divisible, as opposed to what we know from Mathis is that it isn't divisible. We shouldn't have gone that route. That's the wrong way to approach the issue. And it would have it would have failed. Yeah, that's I'm not that's I'm less sure than you are on that. That's what I struggle with because it's unlike Mathis. The Shepard documents in Mathis showed that the location of the offense was a garage. The Shepard documents here just would have shown that Mr. Horton was involved in cocaine dealing. But that doesn't resolve the question. It doesn't get to the finest level of particularity. And that's where I think he may have had a chance. Indeed, he may have won. Well, I don't see that. I don't read the Eighth Circuit to be particularly hospitable to looking at such minutiae. Essentially, they said they treated any disjunctive list of things as divisible per se. And they couldn't do that after Mathis. So I think it would have been futile. And I appreciate the point you say. And if I'm not addressing it adequately, I apologize. But to me, it's just the Mathis decision and the cases that proceeded in the Eighth Circuit are really rife with the notion of all of these things being divisible per se. And forcing the people like Mr. Horton, therefore, to take on the burden of dealing with that in a way that I don't think the — well, I don't know. I really don't know the answer. It's a very good question. I wish I had articulated it better or thought about it better in the brief. But that's all I can say about it at the time. I will say, if I may, just that I think that the district court's approach to this and the government's approach to this, frankly, looking at Seventh Circuit cases and the cases that come up, to say that petitioners and the cases could have raised it in this circuit, what became the Mathis position and succeeded. I don't think that we can say that it would have worked in the Eighth Circuit. But before I finish, and I don't have a lot of time, I want to say that I want to get to the sentencing implications. It's clear the government's conceded two Illinois convictions, leave it short of an ACCA minimum for a life sentence. The government doesn't contest that if his three Illinois convictions are improperly categorized as felony drug offenses, he was erroneously exposed to mandatory life on counts 1 and 58. And without those wrong enhancements, the minimum on each of these was only 20 years. And the sentence of life for felon in possession charge on 924E requires three predicate convictions, but none of them qualify. So the maximum penalty is only 10 years. And with a sentencing range of 20 years to life under 841 and a maximum of 10 years under 924E, there would have been, as a sentencing court put it, room to discuss things here. The government argues for harmless error, but it certainly hasn't carried, it can't carry its burden of proving that the sentencing error didn't affect Horton's substantial rights. I don't think that holds up for a minute. So I think my time has expired and I'll have to yield the floor. Thank you. Ms. Bonamici. Yeah, please, the court. Good morning. The district court correctly held that the defendant in this case could have made the arguments that he's made here in his 2255 motion, and that his remedies under 2255 were therefore not inadequate, not effective, and the saving clause did not permit him to pursue the claims here. Ms. Bonamici, if I could jump in here as a follow up to the line of questioning to Mr. Schreiner, would not a Ruth type argument have been foreclosed by the Eighth Circuit's approach to the divisibility question? So without Mathis, you don't get Ruth. And so a Ruth argument would have been impossible in the Eighth Circuit because the Eighth Circuit was misreading decamps, consistently misreading decamps across a host of sentencing enhancement challenges, as were other circuits. We here in the Seventh Circuit, we're a little better, as you know, but the Eighth Circuit was consistently misreading the signals coming out of the decamp case about the distinction between statutory means and statutory elements for purposes of divisibility analysis. You don't get to over breadth analysis without deciding the divisibility question. So the whole foundation for our decision in Ruth, declaring that Illinois statute is over broad for purposes of federal sentencing enhancement, statutory sentencing enhancements, is not possible without Mathis's clarification of decamps. An argument to that effect, a Ruth based argument in the Eighth Circuit would have been doomed to fail. I don't think that's quite correct, Your Honor, and here's why. I think it may be correct in some cases, it is correct in some cases. In some cases, divisibility is a necessary path in order to analyze whether a statute meets the required definition or whether the definitional portions match. In this case, however, that's not so, particularly with respect to the Oklahoma statute and 401C2 out of Illinois. In those cases, the over breadth analysis required by Ruth doesn't depend at all on divisibility, because in those cases, it's clear that and Ruth actually acknowledges this, it's clear as day with respect to 401C2, that the drug involved was cocaine. So there's no question of which provision of the statute and what he was charged under and which he was convicted of, you know, any of the visibility items. And I don't see any case law from the Eighth Circuit that suggests, even remotely, that the divisibility analysis or the modified categorical approach applied in various cases in that circuit would have been applied in the context of a definitional provision. Because in order for divisibility to have any impact in this case, we would have to argue that the statute involved here, just focusing on the Illinois statute, because they actually operate pretty much the same, that cocaine that is based on isomer, the particular kind of isomers that were outside the federal limit, was divisible. That particular, not just type of cocaine, but that chemical formulation was somehow divisible. And it is not true that other circuits, in the Eighth Circuit in particular, were applying the modified categorical approach in that kind of context. At least the defendant has not provided any kind of basis for assuming that, and I know it's not. I'm not sure if it's responsive to the issue as you're phrasing it right now, but did you happen to look at a case, Malouli v. Holder, in the Eighth Circuit? I'm not sure that I'm familiar with it now, whether I looked at it or not. M-E-L-L-O-U-L-I. I'd be interested in your take on it, because there the court does skip straight to a modified categorical approach in a controlled substance case, just because it lists alternative controlled substances. Your Honor, I am not familiar with that case, and I would request permission to follow up with a letter on that, because I do need to review it. I can't speak to it today, and I apologize for that. That certainly isn't something that I'm familiar with, and it's not something that was raised. In Ruth itself, the court talked about divisibility and said that, and noted that the government wasn't raising a divisible, wasn't saying that the particular, first of all, the court said that the particular provision dealing with cocaine was what was at issue, and that was clear as day, and the court went on to say that the government wasn't arguing that that provision was divisible, nor could it, is what the court said. So in that context, divisibility is not really the nature of the inquiry, and we're really speculating to go any further than that. What's at issue here is really a comparison of the text of the two definitional provisions, the federal and the state, and the text with respect to what kind of conduct is included. And that kind of discussion predates Mathis by many years, and was certainly in play in both the Seventh and the Eighth Circuit for years and years and years. And that's really the question. I'm sorry, Judge? If the Eighth Circuit approaches that question by saying, unprompted even, well, you know what, we've got this statute here that lists so many different things, let's use the modified categorical approach, let's get the Shepard documents. I have the same question for you I had, Mr. Schreiner. What then would have happened? How do we not know the court would have looked at the Shepard documents and then said, you know, you don't have an overbreath problem here, Mr. Horton? In which case, this is a Mathis-type problem. Well, I don't think that that's, I mean, the court may not, if the question I think you're asking is if the Ruth argument was made to the Eighth Circuit, right? And so they would have looked at the Shepard documents, the Shepard documents would have told them nothing other than the defendant was charged and convicted with possessing, distributing cocaine. That's what the Shepard documents would have said. They would have said nothing about, that addressed the Seventh Circuit's decision in Ruth and the question about whether the definition of cocaine in itself was overbroad. It just wouldn't, it wouldn't have mattered there, right? So that's the point, is that the Shepard documents, the modified categorical approach that, as Judge Scudder was mentioning, that the Eighth Circuit was regularly applying in circumstances that the Supreme But once you hit that, once you hit that point analytically, right, the Shepard documents don't answer the question, whereas they did on the Mathis facts, for example. Right. Okay. Once you hit that point analytically, what would have precluded Mr. Horton from just arguing definitional overbreath? Nothing. Nothing. That's, that's, that's the government's position. This argument was available to him then, he could have made it. He did, he did argue, make other arguments with respect to the viability of those convictions as predicates, and he could have made this argument too. I mean, let's face it, the argument was novel, right? It was, it was, it wasn't something that had been, you know, being made, it wasn't being made by defendants all over the country, that's true. But the court has held repeatedly that novel argument is not one that's foreclosed and defendant here has a burden of establishing that his argument, his Ruth argument would have been foreclosed in the Eighth Circuit when he brought his 2255 motion, and he's not met that burden. Miss Bonamici, what's the government's position on this third Illinois conviction? You've conceded the other two. The third, it's the 1995, not the 1992 case that was, where he was convicted in 1995, it's the straight 1995 case. The 401C2, we think that that conviction survives. We think that that conviction does, continues to, in this case, continues to be. That's not overbroad. That's not overbroad. Oh, I'm sorry, excuse me, excuse me. The issue, that's untrue. I'm sorry, I misspoke. It's overbroad under Ruth. Our position is that it doesn't have any possible or plausible divisibility aspects to it. The other two convictions, the other two Illinois convictions were under different statutory provisions that would, that were more like, I won't say they're catch-all, they're not catch-all provisions, but they involve a laundry list of drugs. And they would have, in our view, they would have inspired a Mathis, a pre-Mathis, an Eighth Circuit modified categorical approach to their analysis, whereas the Oklahoma statute and the 401C2 conviction, those two convictions would not have. Because they clearly focused solely on cocaine. And so the question there in those two cases was whether, was and was only, whether the definitions of cocaine in the state and the federal statutes were the same, or whether the state was overbroad as compared to the federal statute. So those are the distinctions we're making. But we acknowledge that, I mean, Ruth, basically, I mean, Ruth covers cocaine. Well, and the Eighth Circuit has its own case that follows Ruth's, right? So regardless of which circuit's law applies on the merits, that 95 conviction doesn't count as a predicate for the ACCA or the 841 enhancement. And on the merits, he's entitled to relief at the question of the saving clause gateway. That's why I don't understand the government's argument on miscarriage of justice. Maybe you could just shed some light on that. I totally understand your futility argument. The argument on the miscarriage of justice point is that in this context, where we're talking about whether 2241 is, whether the gateway is open, the question when it comes to sentencing ought to be limited to whether the defendant's sentence was within the statutory maximums and it was here. With respect to the 924E question, it's a question really of concurrent sentences here. And that's the argument that we're proposing. The focus of our argument here is that instead of, that is not the focus of our argument. That's our position. The focus of our argument here is that the defendant could have raised the arguments he's making here in his 2255. Nothing precluded him from doing that. His arguments were not proposed, and therefore he cannot meet the very rigid requirements of 2241 that Congress has established. So the court has no further questions. The government might ask that this court affirm the district court's decision. Thank you very much. Mr. Schreiner, your time has expired, but you can have a couple of minutes for rebuttal. Thank you, Your Honor. All I would say is, and I know this doesn't, Mr., I think the test asked whether Mr. Horton could have made this argument, whether making this argument would have been futile, not whether making some other argument would have been futile. And the problem I have is just exactly what you identified, Your Honor, in your comment, which is the Eighth Circuit was not going to take the approach that Ruth did until Ruth did it, until Mathis came along. And, you know, I hear from the district court, I hear from the government, Taylor, Taylor, Taylor, you always could have compared the text. Well, yeah, but, you know, it was 30 years after Taylor when the Supreme Court finally told the Eighth Circuit, you're doing it wrong. Just go to the text. And so, you know, I know this goes to the merits, and I think we went on the merits. I don't think that we ought to make the gateway question any more difficult than it already is by saying, in effect, well, he could have done this. He could have done that, which is Ms. Bonamici appropriately concedes. Nobody was thinking about it in those days. And I understand. I understand, you know, what the law is the other way. But it seems to me just as a matter of fairness and looking at this in realistic terms, this was not open to him. This argument was not open to him to make. So with that, I respectfully request that the judgment of the district court be reversed and that the matter be that it be directed to vacate the sentence and remand the case to the Western District of Missouri for further proceedings. All right. Thank you very much. Thanks to both counsel and Mr. Schreiner. Our thanks to you for accepting this court appointment. My pleasure. Thank you, Your Honors. Thank you very much. We'll take the case under advisement.